IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| EDGAR MITCHELL,<br><br>    Plaintiff,<br><br>v.<br><br>BRANDON PHYSIOC,<br>SGT. JOHN ZERKLE,<br>LT. ERIC MOATS,<br><br>    Defendants. | USDC- GREENBELT<br>'26 FEB 20 PM2:41<br><br>Civil Action No. 1:25-cv-1010-LKG<br><br>Dated: February 20, 2026 |

## MEMORANDUM

Plaintiff Edgar Mitchell, who at all relevant times[1] was incarcerated at the Washington County Detention Center ("WCDC"), filed this civil rights complaint alleging that Defendants subjected him to excessive force in violation of his constitutional rights. ECF No. 1. Defendants Brandon Physioc, Sgt. John Zerkle, and Lt. Eric Moats have filed a Motion to Dismiss or, in the Alternative, for Summary Judgment in response to the Amended Complaint. ECF No. 11. Although Mitchell was advised of his right to file an Opposition Response and of the consequences of failing to do so, he has not opposed the motion. ECF No. 12. No hearing is necessary. D. Md. Local R. 105.6 (2025). For the reasons stated below, Defendants' motion, construed as a Motion for Summary Judgment, shall be **GRANTED**.

I.     **BACKGROUND**

Mitchell alleges that on November 5, 2024, there was an incident with correctional staff resulting in him being handcuffed, shackled, brutally attacked, and maced by Defendants. ECF No. 1-1 at 1. He explains that he supposed to be taken to a bail review hearing but in the process of the escort he was antagonized by racial slurs coming from the officers "for no reason." *Id.* Mitchell states that he feared for his life and safety. *Id.* He states he was "beaten up bad and thrown in a cell as if I was an animal" and adds that he was "choked and maced directly in my

---

[1]     As of April 25, 2025, Mitchell is no longer incarcerated at WCDC. *See* ECF No. 11-1 at 4.

face" which caused him respiratory distress. *Id.* According to Mitchell, he had a pre-existing respiratory condition of bronchitis. *Id.*

Despite Mitchell telling the officers "numerous times" that he was not resisting and that he could not breathe, he claims they continued to choke and beat him until he was slipping in and out of consciousness. *Id.* at 2. Mitchell claims the officers threw him into a "wet dirty cell without any clothes on" prior to beating him. *Id.* He states that he constantly asked for medical attention because he could not breathe but the officers simply walked away without responding to his request. *Id.* As relief, he seeks an award of 500 million dollars. *Id.*

Mitchell attaches to his complaint a document entitled Initial Report of Detainee Rules Violation dated November 7, 2024, which varies significantly from the allegations he raises in the body of his complaint. ECF No. 1-2. The report was written by Sgt. Zerkle who was assigned to "Escort" and, in that capacity, he accompanied Sgt. Mills and "M/Dep. Physioc" to D-Pod to get Mitchell for Bond Review. *Id.* at 1. When they arrived at Mitchell's cell, they discovered he had flooded his cell: "water was coming out the door." *Id.* When asked if he wanted to go to Bond Review, Mitchell stated that he wanted to attend and submitted to being handcuffed before exiting his cell. *Id.* When Mitchell reached the hallway, he became argumentative and made statements that he was "on lock" for no reason, and indicated he was not going back to "that cell." *Id.* All of the officers present attempted to explain to him that he would be going back to the cell he was in and that he was on lock for refusing to lock in while he was in the booking area. *Id.* According to the report, Mitchell became irate and started backing away from the escorting officers, who were then joined by two additional officers. *Id.*

Because Mitchell was being disorderly, the officers decided to put him back into his cell which he had flooded before the escort had arrived to take him to Bond Review. *Id.* Mitchell protested and said he wasn't going back into that cell because it was dirty. *Id.* When it was pointed out to Mitchell that it was he who had flooded the cell and that prior to that the cell was clean, he continued to state he was not going into the cell. *Id.* Sgt. Mills then placed his hand on Mitchell's shoulder to begin escorting him back to D-Pod, Mitchell pulled away and Sgt. Zerkle grabbed the handcuffs. *Id.* Mitchell pulled away from Sgt. Zerkle and fell to the floor, resisting staff. *Id.* Zerkle and others began dragging Mitchell along the floor because he refused to walk. *Id.*

When the group reached D-Pod, with Mitchell being dragged still refusing to walk, Mitchell grabbed onto the sally port door which prevented them from getting through the door and into D-Pod. ECF No. 1-2 at 2. At this point, staff had to pick Mitchell up and carry him because he was still resisting efforts to put him back in his cell. *Id.* Sgt. Zerkle explains that he was behind Mitchell at that time and "placed his left arm over his left shoulder, then [his] right arm over his right arm into a 'seatbelt' hold." *Id.* After placing him in that hold, Sgt. Zerkle "sat down backwards onto the floor with him to gain better control." *Id.* Mitchell's leg irons were removed, and he was placed back on his feet. *Id.*

As they began walking Mitchell toward his cell, he continued to resist the effort by pushing back with his feet and once they reached the door of the cell, put his feet against the door jam to keep the officers from putting him into the cell. *Id.* Sgt. Zerkle began to pull on Mitchell's right leg and Barton pulled on his left; once Mitchell's feet were off the door frame, he began kicking at staff, striking Sgt. Zerkle in the face and hitting other staff in the face and legs. *Id.*

Once the officers had Mitchell under control, Barton and Physioc were able to get him into the cell. *Id.* "A tether was placed on the hand cuffs [sic] and Barton exited the cell and Physioc had control of the tether." *Id.* After the door was closed, Mitchell continued to resist by pulling on the tether. *Id.* Defendants have provided the same report, clarifying that the final page of exhibits attached to Mitchell's complaint is also part of the same incident report. ECF No. 1-2 at 4; ECF No. 11-7 at 1-3. The report concludes that Zerkle advised Mitchell that if he did not place his hands in the drop box and stop pulling back on the tether he would be pepper sprayed. *Id.* at 2. Mitchell remained non-compliant and Zerkle discharged pepper spray into the cell through the drop box towards Mitchell's face; Mitchell then complied. *Id.* The report concludes that Mitchell refused medical treatment. *Id.*

Another incident on November 7, 2024 involved Officers Bakner, Sgt. Ramsey, and Lt. Moats. ECF No. 1-2 at 3. On this occasion Mitchell was being housed in a booking cell and was banging on the cell door, yelling that he wanted to make a phone call. *Id.* Although staff attempted to counsel him that this was not the way to go about getting what he wanted, his compliance would only last for a few minutes before his disruptive behavior would return. *Id.* The report indicates that Mitchell's behavior continued throughout his stay in booking. *Id.* None

3

of these correctional officers are named as Defendants in this civil action and this incident appears to be completely unrelated to the claims asserted here.

## II.     STANDARD OF REVIEW

In reviewing the complaint in light of a Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained a "plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor

4

without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

While self-represented pleadings are liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), this Court maintains an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

### III.   ANALYSIS

Defendants assert that Mitchell failed to exhaust his administrative remedies and his complaint is therefore barred by the Prison Litigation Reform Act ("PLRA") and that he has otherwise failed to state a claim against them. ECF No. 11.

Failure to exhaust administrative remedies is an affirmative defense. If Mitchell's claims have not been properly presented through the administrative remedy procedure they must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or

5

diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. Appx. 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). Nevertheless, a claim that has not been exhausted may not be considered by this Court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, 578 U.S. 632, 639 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Ross*, 578 U.S. at 639 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'... normally creates an obligation impervious to judicial discretion")).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he ... PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford* 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). But the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Defendants have provided the Court with verified business records describing the grievance procedure in place at WCDC. ECF No. 11-4. The procedure states in pertinent part that:

> An inmate may invoke the Inmate Grievance Procedure by first obtaining form an "Inmate Request Form". This form is available to inmates upon request. The inmate will use the form to file a written request to receive one or more copies

of an "Inmate Grievance Form". The "Inmate Request" will be completed in line the Inmate Handbook; marked to the attention of the Classification Counselor designated to process "Inmate Grievance Forms"; and returned to a deputy. A deputy receiving an "Inmate Grievance Form" will forward it to the designated Classification Counselor.

ECF No. 11-4 at 1 § 1.1.1. The designated Classification Counselor is charged with the responsibility of forwarding Inmate Grievance forms to any inmate who requests one, and if multiple forms are requested, multiple forms must be sent. *Id.* at § 1.1.2. WCDC Warden Craig Rowe has provided a declaration stating that there is no record that Mitchell filed any grievance regarding either incident that occurred on November 7, 2024, and further states that there is no record of WCDC personnel ever assaulting Mitchell during his incarceration. ECF No. 11-6 at 2, ¶ 4. As noted, Mitchell has not disputed these allegations, therefore his complaint must be dismissed without prejudice for failure to exhaust administrative remedies.

## IV. CONCLUSION

By separate Order which follows, Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment shall be **GRANTED** and the complaint **DISMISSED** without prejudice for failure to exhaust administrative remedies.

2-20-2026
Date

LYDIA KAY GRIGGSBY
United States District Judge

7